## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **JEFFREY H. TOPE,** | ) | |
| **individually and on behalf of** | ) | |
| **all other persons similarly situated,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No.** |
| | ) | |
| **BANKERS LIFE AND CASUALTY** | ) | **JURY TRIAL DEMANDED** |
| **COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## CLASS ACTION COMPLAINT

Plaintiff, Jeffrey H. Tope (Tope), individually and on behalf of all other persons similarly situated, alleges on personal knowledge, investigation of his counsel, and on information and belief, as follows:

## NATURE OF ACTION

1.  This action arises under the Telephone Consumer Protection Act (TCPA), which is a remedial statute that was enacted in 1991 in response to consumer complaints over the explosion of intrusive telemarketing practices.  Robocalls and telemarketing calls are consistently one of the top subjects that consumers complain about to the Federal Communications Commission (FCC).   It receives millions of such complaints each year.

2.  This case goes to the heart of the type of abuse that Congress intended to eliminate with the passage of the TCPA.   It does not involve a one time "technical" statutory violation, but rather a willful concerted policy and practice of Defendant Bankers Life and Casualty Company

(Bankers Life) to flout the TCPA and its associated regulations.

3.   The TCPA creates a private cause of action for persons whose residential phone lines are listed on the National Do Not Call Registry and who receive more than one call in a twelve month period by or on behalf of the same entity.  In addition to the national Do Not Call Registry, a number of States, including Florida, have adopted their own do not call programs.

4.   Bankers Life is a repeat offender of the TCPA law and regulations.  In 2007, it received an official Citation from the FCC for violating the Commission's rules governing telephone solicitations and advertisements.   It was provided with copies of consumer complaints regarding telemarketing calls that it, or entities acting on its behalf, made to telephone lines that were contained on the National Do Not Call Registry.  The FCC explained the law and regulations to Bankers Life.   It was warned in bold underlined language that further violations could result in penalties of $11,000 for each such violation or for each day of a continuing violation.  Bankers Life has ignored this warning for the last eleven years and it could be liable for $44,165,000 in penalties.  (See FCC letter of February 28, 2007 attached at **Exhibit A**.)  To this day, Bankers Life continues the very practices which it was warned about in the FCC Citation.

5.   In addition, at least one State has brought an action against Bankers Life for making calls in violation of the State's no call list as published by the National Do Not Call Registry. Bankers Life entered into a Consent Judgment with the Attorney General of the State of Kansas on February 23, 2004, where it "agrees to refrain from and to be permanently enjoined from engaging in those acts and practices alleged to be unconscionable" which were defined to include calls to persons on the National Do Not Call Registry. Bankers Life paid $5,000 to the Kansas

-2-

Attorney General's Office under the Consent Judgment.  ( See Consent Judgment dated February

23, 2004 entered in *State of Kansas v. Bankers Life and Casualty*, Case No. 04C 263, District

Court of Shawnee County, Kansas, attached as **Exhibit B**.)

6.  Despite these governmental actions, Bankers Life continues to willfully flout federal

and state do not call lists.  Indeed, its business model is rooted in policies and practices that are

inherently inconsistent with obeying telemarketing laws.  Former employees report that they were

expected to make 200 to 500 cold calls a day selling medicare supplemental insurance from call

lists containing the phone numbers of persons about to turn sixty-five who were going to be

enrolling in Medicare.  (See former employee reviews of Bankers Life on wwwglassdoor.com

attached as **Exhibit C**.)   The direct result of these pervasive abusive telemarketing tactics has

been constant complaints posted on consumer web sites concerning Banker Life's practice of

"harassing Telephone calls", "harassing phone calls",   "Daily Harassment and lies by Bankers

Life".  (See copies of posted complaints attached as **Exhibit D**.)

7.  Further, Inside Edition aired a televison program about the abusive telemarketing and

sales tactics of Bankers Life.  The program stated that "(e)very day the company and its agents

reach out to thousands of senior citizens across the county.  They are offering to sell them

insurance that would enhance Medicare, the government-provided health insurance for senior

citizens".   Agents were told "you need to treat these people like you're talking to a child" and

"(y)ou've actually got to put them in the nursing home" by talking about "your son changing your

diaper, or your daughter feeding you..."  (See transcript of program dated June 11, 2010 attached

as **Exhibit E**, and the broadcast itself at  https://www.youtube.com/watch?v=bL8qRMv994Y.)

-3-

8.   As a further result of its abusive telemarketing practices, Bankers Life was investigated by the U.S. Senate Special Committee on Aging.   The Chairman of the Committee sent an investigative letter to Bankers Life after learning of its predatory sales practice.   (See June 16, 2010 Press Release of Special Committee attached **Exhibit F**.)

9.   Plaintiff Tope is a sixty-four year old retired helicopter test pilot for the United States Army.  He resides in Florida.   Bankers Life and its agents made repeated phone calls to his residential land line, even though he continually advised them that he is on the National Do Not Call Registry as well as the Florida do not call list.  To make matters worse, after Plaintiff asked Bankers Life to stop the unlawful calls, it sent a representative who showed up on his doorstep unannounced trying to solicit his business.

10.   Plaintiff brings this action on behalf of the proposed Class defined below to recover statutory damages of $500 to $1,500 per call for these unlawful actions and for injunctive relief to stop Bankers Life from further violations of the law.

## PARTIES

11.   Plaintiff Jeffrey H. Tope is a resident of the State of Florida.

12.   Defendant Bankers Life and Casualty Company is a Delaware corporation with its principal place of business located at 111 East Wacker Drive, Chicago, Illinois 6060. It is a wholly owned subsidiary of Conseco Life Insurance Company of Texas.  Its holding company is CNO Financial Group, Inc.  (CNO).  ( See diagram of CNO legal ownership structure from 2016 10-K attached as **Exhibit G**.)  CNO is a holding company incorporated in Delaware.

13.  Banker Life has 300 offices nationwide with 4,300 agents.  At all relevant times, Bankers Life was in the business of marketing insurance and financial products to the elderly and

those nearing retirement and Medicare enrollment.   Its products include Medicare supplemental insurance, life insurance, annuities, and long term care insurance.   Its revenues in 2016 were $2.6 billion with pre-tax earnings of close to $400 million.

## JURISDICTION AND VENUE

14.  This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2).   The matter in controversy exceeds $5 million, as each member of the proposed class is entitled to up to $1,500 in statutory damages for each unlawful call.   Further, at least one class member is a citizen of state that is different from the state of citizenship of Bankers Life.

15.  The Court also has federal question jurisdiction under 28 U.S.C. § 1331 because this action arises from the violation of a federal statute, the TCPA.

16.  Venue is proper in this District under 28 U.S.C. §§ 1391(b) and ( c) since Defendant resides here, a substantial part of the events giving rise to the claim occurred here, and because Defendant's contacts with the District, including the location of its principal office here, are sufficient to subject it to personal jurisdiction.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991 (TCPA),

### (47 U.S.C. §227 *et seq.)*

17.  In 1991, Congress enacted the TCPA in response to consumer complaints about intrusive telemarketing practices which Congress recognized as a nuisance and invasive of traditional privacy concerns.

18.  Pursuant to federal regulations promulgated by the FCC to implement the TCPA, consumers who do not want to receive telemarketing calls can register their telephone numbers on the National Do Not Call Registry.  47 C.F. R. § 64.1200 ( c )(2).  At the end of the FCC's

2016 fiscal year, the Registry contained over 226 million active phone numbers.   The number of consumer complaints to the FCC about unwanted phone calls was over 5.3 million in fiscal year 2016.

19.   Do not call registrations must be honored indefinitely, or until the registration is cancelled by the consumer, or the telephone number is removed by the database administrator.

20.   A telemarketer who wants to call a person on the Do Not Call Registry must obtain the registrant's signed written agreement to be contacted which includes the telephone number to which calls may be placed.  47 C.F.R. § 64.1200  ( c )(2) (ii).

21.   A person whose number is on the Do Not Call Registry and who has received more than one telephone call within any 12 month period, by or on behalf of the same entity, in violation of TCPA regulations may bring an action to recover statutory damages of $500 per call, which amount may be trebled to $1,500 for willful or knowing violations.  47 U.S.C. § 227 ( c) (5).

22.   Telemarketers  who wish to avoid running afoul of TCPA regulations can check their call lists against the Do Not Call Registry and remove registered numbers from their call lists to ensure that no calls are placed to these numbers.   To avoid violations of the TCPA, telemarketers are required to scrub their call lists at least once every thirty-one days.  16 C.F.R. § 310.4(b)(3)(iv).

23.   Further, TCPA regulations require that entities maintain their own internal do not call registries.  47 C.F.R. § 64.1200 (d).  If an entity receives a residential telephone subscriber request that their phone number not receive calls, the number must be placed on the internal do not call registry not later than thirty days after the request is received.  47 C.F.R. § 64.1200

(d)(3).

24.   It is well established that vicarious liability exists under the TCPA for a seller of services even if the seller does not directly place or initiate the calls.  A private cause of action exists for "[a] person who has received more than one telephone call within any 12-month period **by or on behalf of the same entity** in violation of the regulations".  47 U.S.C. § 227 ( c) (5)(emphasis supplied).  Similarly, the implementing regulations state that after a number is added to a company's internal do not call list, **"the person or entity on whose behalf** the telemarketing call is made will be liable for any failures to honor the do-not-call request".  47 C.F.R. § 64.1200 (d)(3) (emphasis supplied).

25.   The FCC has explained that "(o)ur rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations.  Calls placed by the agent of the telemarketer are treated as if the telemarketer itself placed the call."  Mem. Opinion and Order in the Matter of the Telephone Consumer Protection Act of 1991, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

26.   It reiterated this point in the context of insurance agents working for State Farm when it wrote that " ... a company on whose behalf a telephone solicitation is made bears the responsibility for any violation of our telemarketing rules and call placed by a third party on behalf of that company are treated as if the company itself placed the call."  Declaratory Ruling, In The Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Request of State Farm Mutual Automobile Insurance Company for Clarification and Declaratory Ruling, 20 FCC Rcd. 13664, 13667 ¶ 7 (2005).

## FACTUAL ALLEGATIONS

27.    Plaintiff Tope registered his residential land line phone number ending in 9299 with the National Do Not Call Registry on December 13, 2006.   He has remained on the National Do Not Call Registry for the last twelve years through the present without any interruption.   Plaintiff has also been registered on the Florida do not call list since October 1, 2016.

28.    Notwithstanding his registration on the Do Not Call Registry, he received repeated unsolicited telemarketing calls from Bankers Life and its agents to sell him medicare supplemental insurance.  Plaintiff has never had any business relationship with Bankers Life, nor has he ever consented in writing to these calls.   To the contrary, he repeatedly told the callers that he is on the national and Florida do not call lists.

29.    On January 6, 2018 at 9:55 a.m., Plaintiff received his first call from a Bankers Life representative named "Nancy" who wanted to sell him insurance.   He advised her that he was on the National Do Not Call Registry.  She said that she did not have knowledge about the registry, but that she would place his number on Bankers' Life internal do not call list.

30.    Plaintiff received his second call from a Bankers Life agent on January 29, 2018. The caller identified herself as Sally Osburn working for Qassem Shehadeh who is licensed with the State of Florida as being an agent for Bankers Life and Casualty Company.  Once again, plaintiff advised the caller that he was on the National Do Not Call Registry.

31.    The third call to Plaintiff from a Bankers Life representative was on January 30, 2018.  The caller said that her name was Katherine (sp) and that she represented Bankers Life. She said that she was calling with medicare supplement insurance options due to Plaintiff's upcoming 65th birthday.  When Plaintiff asked for her address, she hung up.

-8-

32.  The fourth call to Plaintiff from a Bankers Life representative was on February 2, 2018.  The caller identified herself as Jane Petri and said that she represented Bankers Life. Once again, Plaintiff advised her that he was on the National Do Not Call Registry.

33.  The fifth call to Plaintiff was on February 13, 2018 from a Bankers Life representative who identified himself as Bruce Silverberg.  He said he was a licensed agent for Bankers Life.   He was calling to sell Medicare supplemental insurance due to Plaintiff's upcoming sixty-fifth birthday.  Plaintiff advised the caller that he was on the National Do Not Call Registry and had made multiple complaints about unsolicited calls from Bankers Life.

34.   The most recent contact from Bankers Life was on February 14, 2018 when Catherine Dowie of the Sarasota, Florida office showed up unannounced on Plaintiff's door step trying to sell him insurance notwithstanding his repeated requests that Bankers Life stop calling him.  She gave Plaintiff a business card identifying herself as being with Bankers Life.  (See **Exhibit H** hereto.)

35.  All of the foregoing calls from Bankers Life were documented contemporaneously by Plaintiff and reported to the State of Florida do not call office.  Florida received at least fifteen other do not call complaints about Bankers Life in 2015 and 2016.  (See **Exhibit I**.)

36.   Plaintiff never provided Bankers Life with a signed written agreement consenting to receive telemarketing calls.  The aforesaid calls violated the TCPA.

37.   Plaintiff received more than one call, by or on behalf of Bankers Life, within a 12 month period in violation of TCPA regulations.  He is therefore entitled to bring suit under the TCPA for statutory damages.

38.   Plaintiff is informed and believes that Bankers Life supplied the callers with

personal information about Plaintiff including his age, address and telephone number and that

Bankers Life actively encouraged the telemarketing calls.  Indeed, Bankers Life supplies agents

with a phone script to make telemarketing calls and advise them on how to deal with consumer

objections such as already having insurance or not being interested.  (See script attached as

**Exhibit J.**)  The script  does not even address the possibility that people being called could be on

the National Do Not Call Registry.

39.  As indicated by the FCC Citation, the Kansas Consent Judgment, the Inside Edition

investigation, the U.S. Senate investigation, and numerous consumer complaints, Bankers Life is

well aware that its representatives and agents were and are violating the TCPA.  Despite repeated

warnings, it has failed to take any effective action to end the violations.  Due to the willful nature

of its violations, Plaintiff is entitled to treble damages or $1,500 per call.

## CLASS ACTION ALLEGATIONS

40.  Plaintiff brings this action under Rule 23(b)(3) of the Federal Rules of Civil

Procedure on behalf of a Class defined as follows:

> All persons in the United States whose telephone numbers were listed on the
> national Do Not Call Registry, and to whom, at any time within the applicable
> limitations period, more than one call within any twelve month period was placed
> by or on behalf of Bankers Life to market, promote and sell its insurance products.

41.  Plaintiff reserves the right to modify the Class definition as he obtains further

information, including telemarketing call records, through discovery.

42.  Excluded from the Class are Bankers Life and entities in which Bankers Life has a

controlling interest, its agents and employees, the Judge to whom this action is assigned and any

member of the Judge's staff or immediate family.   This suit seeks only statutory damages and

injunctive relief. It is expressly not intended to allege claims for personal injury or emotional distress.

43. The proposed Class can be identified through telephone records, databases used in making the telemarketing calls, and the numbers on the National Do Not Call Registry.

44. The number of Class Members is believed to be in the thousands, making the classes so numerous that individual joinder of all Class Members is impracticable.

45. Plaintiff is a member of the proposed Class.

46. There are questions of law and fact common to Plaintiff and to the proposed Class, including but not limited to the following:

a. Did Bankers Life and its agents place telemarketing calls to Plaintiff and the Class Members?

b. Is Bankers Life liable under TCPA § 227 ( c) for these telemarketing calls?

c. Were the calls placed by or on behalf of Bankers Life?

d. Did Bankers Life and its agents systematically make calls to persons who did not provide it with their express written consent to make such calls?

e. Did Bankers Life and its agents systematically make telemarketing calls to persons registered on the National Do Not Call Registry?

f. Did Bankers Life and its agents systematically make telemarketing calls to persons who requested it not to make such calls?

g. Did Bankers Life act willfully so as to entitle Plaintiff and the Class Members to treble damages?

h. Should Bankers Life and its agents be enjoined from further unlawful conduct?

47.  Plaintiff's claims are typical of the claims of Class Members.

48.  Plaintiff's interests do not conflict with those of Class Members.   He will fairly and adequately protect interests of Class Members.  He is represented by counsel experienced in class action litigation.

49.  Common questions of law and fact predominate over questions affecting only individual Class Members, and a class action is superior to other methods for the fair and efficient adjudication of this controversy.

50.  The interest of Class Members in individually controlling the prosecution of separate claims against Bankers Life is small due to the time and expense necessary to pursue individual litigation.  Management of these claims in a class action poses no significant impediments.

51.  Bankers Life has acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate.   Plaintiff is informed and believes that the TCPA violations complained of herein are likely to continue unless an injunction is entered.

## COUNT ONE

## NEGLIGENT VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT

52.  Plaintiff repeats and realleges the allegations of paragraphs 1 to 51 above.

53.  The foregoing acts and omissions of Bankers Life constitute numerous and multiple negligent violations of the TCPA, including but not limited to each of the provisions cited above.

54.  Plaintiff and Class Members received more than one call in a twelve month period notwithstanding being on the National Do Not Call Registry.

55. Bankers Life is liable for the violations. It placed the calls or the calls were placed on its behalf.

56. As a result of Bankers Life's negligent violations of 47 U.S.C. § 227 *et seq*., Plaintiff and Class Members are entitled to an award of $500 in statutory damages for each and every call in violation of the statute pursuant to 47 U.S.C. § 227(b)(3)(B).

57. Plaintiff and Class Members are also entitled to and request injunctive relief prohibiting Bankers Life's from further violations of the TCPA.

58. Plaintiff and Class Members are entitled to an award of attorney's fees and costs.

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff and all Class Members the following relief against Bankers Life:

A. An award of statutory damages in the amount of $500 for each and every call made in violation of the TCPA;

B. Injunctive relief prohibiting future violations of the TCPA by Bankers Life;

C. An award of attorney's fees and costs;

D. An order certifying this action as a class action pursuant to Federal Rule of Civil Procedure 23, establishing a Class and any Sub-Classes the Court deems appropriate, finding that Plaintiff is a proper representative for the Class, appointing Plaintiff's lawyer as Class Counsel; and,

E. Such further and other relief as the Court deems appropriate.

## COUNT TWO

## KNOWING AND WILLFUL VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT

59.  Plaintiff repeats and realleges the allegations of paragraphs 1 to 51 above.

60.  The foregoing acts and omissions of Bankers Life constitute numerous and multiple knowing and willful violations of the TCPA, including but not limited to each of the provisions cited above.

61.  Plaintiff and Class Members received more than one such call in a twelve month period notwithstanding being on the National Do Not Call Registry.

62.  Bankers Life is liable for the violations because it placed the calls or the calls were placed on its behalf.

63.  As a result of Bankers Life's knowing and willful violations of 47 U.S.C. § 227 *et seq*., Plaintiffs and Class Members are entitled treble damages of $1,500 for each and every call in violation of the statute pursuant to 47 U.S.C. § 227(b)(3).

64.  Plaintiff and Class Members are also entitled to and request injunctive relief prohibiting Bankers Life's further violations of the TCPA.

65.  Plaintiff and Class Members are entitled to an award of attorney's fees and costs.

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff and all Class Members the following relief against Bankers Life:

A.  An award of treble damages in the amount of $1,500 for each and every call made in violation of the TCPA;

B.  Injunctive relief prohibiting future violations of the TCPA by Bankers Life;

C.  An award of attorney's fees and costs;

D.   An order certifying this action as a class action pursuant to Federal Rule of Civil

Procedure 23, establishing a Class and any Sub-Classes the Court deems

appropriate, finding that Plaintiff is a proper representative for the Class, appointing

Plaintiff's lawyer as Class Counsel; and,

E.  Such further and other relief as the Court deems appropriate.


## DEMAND FOR A JURY TRIAL

Plaintiff demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil

Procedure.

Dated: February 26, 2018

Respectfully submitted,

Plaintiff Jeffrey H. Tope,


By: _Howard B. Prossnitz/s/_


LAW OFFICES OF HOWARD B. PROSSNITZ
1014 Ontario Street
Oak Park, IL 60302
(708) 203-5747
prossnitzlaw@gmail.com